and I'm putting Lisa on the case. 3-17-0649, the white cell or black cell, averaged by age, role, age, and personal role, bring DBA and Reconstruction and Attention Specialists to the facility on the first floor. Lisa, please. Thank you. May I please report? My name is William Connor and with my full counsel, Melissa Brewer, represent the defendant, counter-claimant below, Ralph Ring, DBA, Patton Ring, truck trailer, and engine specialist. I'd like to begin with the issue labeled as Roman numeral 3 in my brief, which relates to the lack of proof of a knowing violation of the Automotive Repair Act. The plaintiff in this case did not prove, did not plead, did not argue for, and did not obtain a judgment that Patton Ring knowingly violated the Automotive Repair Act. And that's important because it is a requirement of both Section 85 of the Automotive Repair Act and of Section 2Z of the Consumer Fraud Act that that standard be met. Remember, the Automotive Repair Act doesn't allow, on its own, for a private right of action. It sends you to the Consumer Fraud Act and both the section that does that, Section 85, and Section 2Z of the Consumer Fraud Act, where you are sent, require that only a knowing violation can be the subject of a private right of action. As in the Kunkel case cited in our brief, there is evidence here, in this case, as to alleged procedural violations of the Automotive Repair Act. But also as in Kunkel, in this case, the plaintiff produced no evidence on Patton Ring's state of mind about those violations. So, the result should be as it was in Kunkel, that there is no violation of Section 2Z of the Consumer Fraud Act. I think the Wendorf, in the Wendorf case, it was another district, Federal Northern District of Illinois case, but I believe that the court put it well in describing maybe what a knowing violation looks like or doesn't look like. It was quoted from that at page 978 of that opinion, quote, that defendant sent a letter, is evidence that it intentionally and knowingly charged plaintiff's account, but it is not evidence that defendant knowingly violated the PFSA, which is the Physical Fitness Services Act. This issue is a clearly erroneous standard, and I believe it is clearly erroneous at the trial court. When you look at the judicial order, the judgment order, he said, a violation of the Automotive Repair Act is a violation of the Consumer Fraud Act, and it wasn't argued, and he did not illustrate it as a knowing violation. Turning to Roman numeral issue 1, they said that they were too busy to give an estimate, right? That is correct. I mean, your argument appears to be now that they didn't knowingly do something because they weren't aware of the law. That is not my argument. My argument is that they didn't put any evidence on any intent whatsoever, anything that even approaches a knowing violation of the act. Well, they knowingly intended not to provide an estimate because they were too busy. Correct. And because this is a commercial truck repair operation that repairs fleet 18 wheelers. This is not the fleet we're dealing with. No, but that's the mindset that if there was going to be evidence put on, which there was not, as to the mindset as to the Automotive Repair Act, that would have been what would have been said. I mean, this is not a commercial fleet exception. It's not that. I'm not to that yet. No, that's correct. So if the defense says they're too busy and they never sought a waiver of that provision from the plaintiff for the estimate requirement, is that right? A waiver was never sought. Well, the defense in this issue, guys, is that the plaintiff has a proven proof. The plaintiff's proven proof is a proven knowing violation. They didn't say anything, but on any evidence about that. They talked only about the mechanics of what occurred or didn't occur, or the lack of the evidence, the lack of the estimate, I'm sorry. They detailed that, but they didn't put on any evidence about the state of mind shows a knowing violation. Well, they normally said they were too busy to provide the estimate. Is that right? They did tell the plaintiff that. Yes, that's correct. So isn't that knowingly? Not the way I read the Kunkel case or, for instance, the Wendorf case. It's a knowing act. He was conscious that he did not give an estimate, but it doesn't say anything about the applicability in his mind of the ARA. I mean, when you know you do something, it's about what you do, not whether or not you wear the law, what you do. Well, I mean, that might be the criminal standard. Here, it's more than that. As these courts that have considered the issue say, you've got to show that there's some evidence about the state of mind as to compliance or noncompliance with the Automotive Repair Act. Not just that you, you know, he willingly went to work that day and willingly worked at the car. But is that a knowing violation? What do you have to know that you're talking about? I think that the way I would have proved it if I was plaintiff's counsel, I would have asked Ralph Ring about, OK, have you ever taken your car in for warranty work at a dealer? And we'd have represented with the uniform waiver form. It talks about waiving an estimate. Again, I would have said, did you notice that pretty much every car repair place uses that form? And whether that maybe shows him it is required by law? I would have asked him if he knew it was required. I would ask him how his relationship with a company like CRST, the trucking company for which Mr. Bell, the plaintiff, was a driver. I would have asked him about his relationship with a company like CRST. It might not be countered by that. What relevance does the relationship of the company have to this case? Well, I think it has a lot to do with it. Because that's the, those are the only facts that were put forward. Either, you know, did it, was an estimate given or not? And then there was a lot of testimony about the relationship with CRST. But there wasn't anything about knowing what was in the list. What other questions would you think should be asked? Should I be asking? Yeah, on knowing. Then I would ask. Because so far all the questions you've sent forth are basically about, are you aware of the provisions of the statute about, were you presented with a waiver? These are all about knowledge of the statute. I would have said, is the Bell situation more like a car repair situation? Or more like, you know, big trucking company repair situation? And I would have also asked. Why would the trucking be railroad? Well, it's going to come in to talk about the fleet exception. Okay. But you're not, this isn't a fleet exception, is it? I think it is a fleet exception case. Well, you now think it's a fleet exception case. Yeah, that's, that was number one issue in my brief. Yeah, I think it's a fleet exception case. I thought you were arguing that, but then when I asked you the question, you were. I'm sorry, maybe I misunderstood. I was still on the lack of knowing violation group. So, moving on to my, I'm sorry. As to the fleet, how do you get that this is applied to a fleet exception? How do you get that? I get there in a couple of ways. First of all, I'm aware the Repair Act has definitions in it. In fact, the key one where the fleet exception is, is a definition. It's a definition of automotive repair. And, there's, but there's no definition in there of fleet. So, we go and try to find one, and the only one that I can find in the Illinois Statutes is in the Illinois Vehicle Code at 65, or 625 ILCS 5 slash 1-122. And there, fleet is defined as one or more commercial vehicles. So, there's no dispute I think that the truck is a commercial vehicle, and there's no dispute that it was being repaired. Here's, let me be very direct. Here's my problem with the fleet argument. The truck in this case, was not, belonged to the plaintiff, right? Belonged to the plaintiff. It was owned by the plaintiff, but it was not controlled by the plaintiff. It belonged to the plaintiff, not Cedar Rapids. Right? True. And, was not part of the work being done, for the ongoing service or maintenance contract with Cedar Rapids? The, let me answer that like this. I, I mean, there was a maintenance contract and a service contract. The, the bill that was sent to Mr. Bell, has his name, and it has Perens, CRSP, close Perens, behind it. Okay. Did the bill get sent to the, apply to the service or maintenance contract with Cedar Rapids? That does not appear in the evidence of the record. No. Cedar Rapids isn't a part of this case. Right? Cedar, yeah, it is not. Yeah. The claim is that, if you want to apply the rules, for the ongoing service and maintenance contract with Cedar Rapids, right? I would, I would be happy if it's found that that's an exception that applies. I also think the fleet exception, I mean, I know you're arguing that, but, but, no bill was ever sent on the maintenance or contract with Cedar Rapids that was sent to this guy. With CRSP's name on it. Okay, but, who, who are you trying to bill? I don't think it matters. I think if we look at the, the language of the statute, it, it says, let's look at, let's look at Lester's definition. I guess, to make the long and short of it is, if it was part of the maintenance contract, you'd be billing the separate body, wouldn't you? It could be covered by the maintenance body. Is there anything, is there anything in the record to establish that, the repairs, that were performed on this truck, the cost of those repairs, would be the same as under a maintenance contract with CRSP? As opposed to just, perhaps you own a tractor, and you take it to Catering for the same repair service. Is there anything to suggest that the billing amount, that was arguably, at least captions L, got the benefit of the maintenance contract with CRSP? One, I think is that parabetical phrase, in, in the bill, both of the bills. Two, is the statement that, in the statement of facts, actually, plaintiff's statement of facts, says that CRSP had unified control throughout its fleet. And it says, that CRSP allows plaintiff to do this, CRSP allows plaintiff to do that, which is CRSP's control. I think that's some evidence of that. I also think that, Mr. Bell says, in his testimony, that CRSP has a fleet. I think there is that evidence in the record. His interpretation, plaintiff's interpretation, of this fleet exception not applying, leads to a little bit of a real life absurd result. And that is, that in order, in order for the two vehicle requirements to come in, so we have to read that entire thing as, the clause in the statute, section 10 of the ARA says, the term does not include commercial fleet repair, and then they want to tack on it, or maintenance transactions involving two or more vehicles. I was trying to figure out, how you could ever come within that, if it's two or more vehicles for fleet repair. So, you would have to have, two CRSP vehicles, pick a fleet, have to break down, on the same day, in the same town, and be taken to the same repair shop, in order to read the statute, the way they do. I mean, it doesn't make any sense. So, they must have included, fleet to mean something else. It must have been, the statutory definition of a vehicle quote, meaning one or more, because otherwise, we could never hardly have that situation arise. And so that would be a meaningless exception. If it takes two of them, to be exempted, or, maybe we're looking up, at the overriding CRSP fleet, than just the, Mr. Bell's old truck he drives. So maybe that, the name of that doesn't make any more sense. It's just an absurd result, to read it that way. May it please the court. My name is Gabriel Casey, and I represent, plaintiffs, appellees, the Bells. Your honors, this is my first, appellate oral argument, so I apologize, if I appear nervous, or react improperly. I was not trial counsel, for this case. I am merely, appellate counsel. And, my knowledge of the case, is similar to yours. You said zero? I am, exceptionally, appellate counsel. Okay. Okay. But my knowledge of the case, is drawn from where your knowledge, of the case is drawn from, which is, the record that was submitted. To answer, Justice Harreld, one of your questions, my clients were billed, individually, that appears, in appendix, pages 17 through 22, written, handwritten, and printed out, invoices to Lord Bell. As I stated, in my brief, there was comments about, the employment, and CRST, versus personal use, of a vehicle. But, the testimony is clear, that my client, was an independent, owner operator, contractor, for CRST. As that, and I state this, in my restatement of facts, supplemental facts. Did he benefit, in any way, shape, or form, by, if he even, is an independent, contractor, from a maintenance agreement, or service agreement, contract with CRST? Justice, according to the record, I can't find that he did. What I have found, from the record, I have on page four, in my brief, the statement of facts, that CRST facilities, and their national network, of providers, is available, to independent contractors. CRST, CRST, and the what? CRST facilities, and their national network, of providers. So for instance, National network of providers. Yeah, if an independent contractor, for them, with one of their truck, you know, one of their own trucks, is out, but they're labeled, so they all say CRST, and they break down, and they don't know anybody, in the area, they can simply call back, to CRST, and have CRST take care, of everything. CRST will find the repair shop, through their national network, they will get whatever, their quotations, Basically, the AAA program. Essentially, and they will do it, completely, with the shop. That's all summarized, on page four. Does patent ring, part of that operation? I don't know, your honor. I would assume, that they are, because I believe, there was past service, on this truck, through CRST, but that invoice, was billed out to CRST, the bells never had,  regarding quotations, payment for services, the bells, for that past service, paid directly, to CRST. That's how, that service works. So just to kind of, clear up that for you. That's the way it works, under AAA too. But you have, an overarching contract, that benefits, because of reduced costs, and repairs, et cetera. Your honor, I don't know the relationship, So the record, does not have any evidence, dealing with that? No, your honor. I read the record, the record does not state, that he received, a CRST discount, personally, or benefit, of any maintenance contest, they may, or may not have. I'd like to briefly, talk about, the constraints, that wasn't spoken about much. I don't think, I need to say much on it. The Automotive Repair Act, is very clear. There, they do allow, a waiver, but as a written waiver, and as my brief states, you know, they give the written waiver, in section 20, of the Automotive Repair Act. If that wasn't signed, there's no such thing, as a constructive waiver. If there was a constructive waiver, saying, we're not going to give you, an estimate, orally multiple times, and that would fly, then it would completely undermine, that section of the, Automotive Repair Act. Moving to, the argument that, the knowing, violation argument. I think, that this can be, tripped up a lot, and one of the problems, is the case law, is not very good. And the same goes, for this business vehicle. I'm sorry, your honor. Not very good. Not my opinion. Did you say, tripped up a lot? Yes, your honor. Oh, okay. I believe attorneys, and judges, are confused a lot, on the commercial exception, as well, because of the case law, that exists. When you go, and look at the, commercial exclusions, and you know, does a business, doing a commercial, vehicles count, does it not count, as an automotive, repair facility, subject to waive, giving, estimates, or, it's getting waivers. The only case, that appears, is the Montgomery case, which is cited, by defendant. And the Montgomery case, is from the second district, and it's the only case, that appears. And it's dealing, specifically, and it holds, specifically, concerning, automotive, antique restoration, and custom projects, whether or not, the act applies, to those shops. And it finds, that it does. But in it's dicta, during the way, it talks about, specific exceptions, that the act carves out. And this is often, misinterpreted, misquoted, and everything else, by attorneys, because they say, hey, it's in a case, it must be good law, there's no other cases, on point, you know, there's no, there's nothing else, to go on. The statement from that, is that, this is Montgomery, versus, Nostalgia Lane. These provisions show, that the General Assembly, considered different type, of repair projects, and intended, that the Automotive Repair Act, would not apply, to fleets, business vehicles, the installation, of certain small merchandise, and statutorily defined, collision repairs. Clearly, it's illustrative dicta, used by the court, talking about the exceptions, they're not evaluating, in that case, whether or not, there's a commercial, fleet exception, it's not before the court, and they don't hold, as such. So I'd ask, and I mentioned in my brief, that this court, does issue, if it's willing to, a published opinion, sorting out that, illustrative dicta, compared to the actual, commercial fleet exception. There's, English conjunction, arguments made, by defendant appellate, that you can, split up the exceptions, a little more. That if it's just, a commercial fleet, transaction, it's exempt. So, any vehicle, used for business, is a commercial fleet vehicle, one or more. That's clearly, not the case. I don't argue, with the general assembly, with the definition of, commercial fleet, including vehicles, of one or more. But clearly, if you look at the plain, structure of the exceptions, it's, it doesn't follow, that you would just, exempt all businesses, all business use vehicles. Because if you did, the second half, of the exemption, with ongoing service, or maintenance contract, involving vehicles, primarily used for business use, would be null and void. It wouldn't be required. Because everything, that was business owned, or used, would already be exempted, by the first part. To, to the knowing violation, I believe Justice Carter, you hit the nail, on the head, when, it's the intentional act. So, there's a big difference, between fraud, and consumer fraud. And, not a lot of attorneys, practice in consumer fraud, so it doesn't even come up, very much, in day to day practice. But, consumer fraud, one of the biggest advantages of, there is no, intent to deceive. Even a negligent, misrepresentation, in a pure consumer fraud case, is actionable. So, accidental, negligent, anything else, I misspoke a fact, but, I thought it was true, is not a defense, if a consumer is damaged. I believe, what, what occurred, is that, they didn't want that, lower barrier, to be extended to violations, of these other acts. They didn't want someone to, negligently, not give an estimate, on occasion, or negligently, not give a, home repair brochure, for a repair, and then have that held against them, when it was accidental. It has nothing to do with, knowledge of the law, it has to do with, intent to act. Clearly, the record reflects, that defendant, intended, not to give an estimate, and, continued to do so, and it was never, properly weighed. So, I don't believe that, that is a valid, well, there's some other cases, that seem to disagree with it. I mean, I think you're trying to say, well, the intent, to not give an estimate, is the intent, to violate the law, is that correct? I am saying, that the intentional, doesn't go to the intent, to violate the law, your honor, because to say that, would require additional, burdens and steps, and essentially, take the teeth, out of this entire section, of the Illinois Consumer Fraud Act, and a lot of the mechanism, and enforcement, for private parties, under the Automotive Repair Act. If you say, intent to violate the law, like some of the case law, does say, and that's why I said, it's not very good case law, is that, they don't actually go in, to analyze, what that knowing violation is, but they do make, make comments, that would make you think, it requires knowledge of the law, and intent to violate the law. But, as Justice Carver mentioned earlier, mistake of law, is no defense, and I've quoted that, in my brief as well. I cited to you, the Turner case, out of the Northern District, and it quotes, to another circuit case, and another Northern District case, from the 80's and 90's, I believe, and it very clearly states, that only a knowing violation, of this section, they're discussing in the case, is actionable. Though a mistake of law, is never a defense, a mistake of fact, may excuse conduct, that would otherwise violate, this is the Fair Debt Collections Practices Act, which is another consumer protection statute. So, that's an analysis of a knowing violation, saying, if they made a material mistake of fact, you know, if, if defense could stand here and say, we thought this was CRST, through our ongoing maintenance contract, the whole time, we argued it in court, we sent the invoice to CRST, initially, and that's the issue, I think that they would have an argument, that they were mistaken by fact, and it was not a knowing violation. But instead, they stand here and say, my client, the defendant, doesn't think the act applies to him, because he deals with commercial vehicles, primarily. So, he's saying, I read the law, I didn't think the law applied to me, so I intentionally didn't follow the law. And that's never something that we've held anyone to, whether it be criminal or civil statutes. You don't have to have knowledge of the law, ignorance of the law is no defense, and mistake of law is no defense. It's only a mistake of fact, or perhaps a negligence of defense, which is clearly not here in this case. It's repeated over and over in the record, that it wasn't, can I have an estimate? No. Can I have an estimate? No. It was an intentional, I will not give you an estimate. So, again, briefly, the other cases, brought up, that comes around the window. So, you're saying it doesn't matter, that the person knows, or doesn't know, that they're required under the law to give an estimate. Correct, Your Honor. Okay. So, it's a strict liability. Yes, Your Honor, because, otherwise, To analogize. Right, and if it was the other way around, Your Honor, say that they didn't have to have knowledge under the law, that I have to either give a written estimate, or get the written waiver signed, and I operate an automotive repair shop, and I find this out, before I open, after I open, at any point, and I don't want to do it, because it hurts my bottom dollar, because then I'm bound by those written estimates. You have to give a written estimate, and you can only go 10% above that written estimate, without prior approval. You can't just tack on additional services, and everything else that's happened in this case. So, that business owner, or person, says, I'm not going to follow the law, I'm going to pretend like I don't know it, and the first time I'm brought to court on it, I'm just going to say, either I didn't know about it, so I didn't intentionally violate it, or, I knew about it, but I didn't think it applied to me. If it was, I didn't think the law applied to me defense, for knowing violations, was applicable, it would be absolutely ridiculous. It would allow, you know, years of wrongful actions, followed by, you know, a coming to the light type of court appearance, and then from then on, they could be held to the status of the law, and the law isn't supposed to merely apply to individuals and businesses, after they've been found to have been in violation of it, whether or not they're let off on the technicality of being knowing. So, I don't understand why that would be the intent of the legislature, and that's why I bring it back to the difference between consumer fraud and common law fraud. And the fact that there is no knowing requirement in consumer fraud, so this section, to bring in all these other act violations, added that knowing back in, so that negligent or accidental violations of those laws wouldn't be actionable. Because again, you get attorney's fees, you get punitive damages, right? I can't make defenses for where this case is at, as far as what plaintiff's counsel did originally. I can't state why there wasn't a conversion charge for holding onto the vehicle, breach of contract, or oral contract, and other types of basic common law fraud for what occurred, based on deceptive run for practices. But all that is before the court today is this not giving an estimate or getting a signed waiver, not allowing the vehicle to be released after not following that,  There were damages shown at trial, actual damages of over $14,000, attorney fees of over $3,000, and they were all capped from the Small Claims Court. And now we are here, with the Small Claims Attorney fee capped, in play. So, this is... Can you help me out with the motor vehicle breach definition? Um... Why shouldn't we adapt? Your Honor, it just doesn't matter. Let me pull up why. So as I mentioned in my brief, on page... the top of page 6, the bottom of page 5, begins the statute section and the exception. It states, the term automotive repair shop, which is, if they don't qualify as an automotive repair shop, they don't have to give a written estimate, does not include commercial fleet... I'm sorry. Commercial fleet repair or maintenance transactions involving two or more vehicles, or ongoing service or maintenance contracts involving vehicles used primarily for business purposes. So, one of the... You should draw more commas in this. You should say, commercial fleet repair is exempted. Because there's an or there. And then, maintenance transactions involving two or more vehicles are exempted. And then there's another or, ongoing service contracts. Would those be exempted on their own? Or maintenance contracts involving vehicles used primarily for business purposes. They would be separately exempted. So they want to draw three to four exemptions out of what is two exemptions. And I go through and I explain coordinating conjunctions, the use of commas and lists and everything else. And the legislator didn't make a list of three to four exemptions. They made two exemptions, and they included more broad language so that, essentially, those with a business relationship could easily establish that they don't have to follow this act. So that every time CRST wants to go to a defendant appellate, they don't have to go and say, hey, I need a desk in the... you know, are we following this? Are you going to come back and get me later? It's there for their convenience. It's not to say that just because you have a business vehicle or that your vehicle is used primarily for business, that you don't have to give an estimate. This act is... Thank you. This act is to protect consumers who go to repair shops to encourage honesty, to encourage a dialogue, so that we don't get in these dispute-type situations where, hey, I thought the bill was going to be $3,000. No, the bill is $9,000. Because then you have the issues. Now I can't get possession of my vehicle because they can claim a mechanics lien and this and that. So the more openness in automotive repair transactions, the more all consumers will benefit. You know, if you're a big business and you're doing big business transactions for thousands of dollars, it's probably not as applicable to you because you're in a negotiating standpoint. You can get the benefits of an ongoing maintenance contract and agreement. You're going to be my primary provider for maintenance in this area. You're going to cut me a deal on the prices and you're going to get a lot of business out of it. And both those parties are very happy. They don't have to go in and negotiate every time they bring in a vehicle and figure out what the cost is going to be. But an individual, a private consumer, they're not in that position. And to say just because I use my vehicle as part of independent contracting and it's a work vehicle, when I go to a shop, that this doesn't protect me and they don't have to follow these, it doesn't encourage anything positive. Because if it did, we wouldn't be in this situation right now. So the fact that it may be, the semi-truck question, may be considered a commercial fleet vehicle, it doesn't matter. It absolutely doesn't matter because there is no repair or maintenance transaction involving two or more of those vehicles. And on the other end of CRST, I know that Council made the argument that you're never going to have two vehicles in at the same time. And be that as it may, ongoing service or maintenance contracts involving vehicles used primarily for business purposes. All they have to do is have a contract with the repair provider and they don't have to worry about having multiple vehicles, be it at one time or over a certain term. So that's why I don't think that the commercial... I'm just summarizing the very slow, slow down in speech here. What are the two exemptions? Your Honor, the two exemptions are commercial fleet repair or maintenance transactions involving two or more vehicles. And I explained this in detail in the brief. You can't put commas in that sentence because repair or maintenance are similar and they're being, they're having a coordinated conjunction in between them. Two or more vehicles, two or more of those counting adjectives, they're being combined. Then you have the or in the middle of the sentence that joins the two independent clauses of the sentence in the second exception, which is ongoing service or maintenance contracts involving vehicles used primarily for business purposes. So again, you've got service or maintenance contracts, which are similar terms, being joined by an or. There's not a comma in this sentence. You can't carve out a separate exception for just three words of the sentence. And then the second one starts, you know, maintenance transactions involving two or more vehicles and then also carve out ongoing services. So let's say you have a business and you have one vehicle. Yes, ma'am. It's not covered? Or it is covered?  unless you were to enter into an ongoing service or maintenance contract. So there's no exemption? No, no. Or you can sign a waiver. No, I'm trying to get back to your linguistic analysis. Yes, ma'am. I had to go on the internet and go back to some primary school education to learn about coordinate conjectures again. I understand that. Now, let's go back. Okay. So you're saying you're exempt from this statute if you have two or more vehicles, right? Is that the first one? It would have to be commercial fleet vehicles. Okay. We went to a definition of that somewhere else. So two or more commercial fleet maintenance or repair transactions. That would fall under. Or? Or... Second one? Ongoing service or maintenance contracts involving vehicles used primarily for business purposes. Okay, so vehicles is plural. Correct, Your Honor. Okay. So there would never be an exemption to get one vehicle and you have a service contract. If you want to strictly read into vehicles used... Well, yeah, it's plural, isn't it? Yes, it is, Your Honor. And if that's an exception, this court wants to not allow for a single individual who contracts with a business. But I don't think... Not a single individual. It could be a company that has just one vehicle. Yes, Your Honor. It could be a sole proprietor, an entity or the business, an independent contractor like my client who owned a vehicle that he used for business on his own and he only owned one vehicle. But to say that he's not, in the free market, able to enter into a long-term ongoing service contract with a provider, I don't think that's the intent of the Act. No, he could do that, but if he did that, then the long-term service provider has to each and every time comply with the Act. I don't believe that... Not exempt it, because you've got vehicles there, plural. The court can end up on that conclusion, Your Honor, if you'd like to, but I don't believe that that follows the spirit of the Act and what it's trying to carve out in these exceptions. Well, we don't look into the spirit of things. That's what we're declared to do. No, Your Honor. Okay. Any more questions, Your Honor? Thank you, Your Honor. Thank you. I'd like to speak to a few things that were mentioned. First of all, the record does contain references to a mixed bag of CRST and Mr. Bell, and we've got this invoice with the CRST on it. So, if there's a mistake of fact made by Mr. Ring, I think it lies in whose really fleet is this, whose vehicle is this, and I'm afraid I put both names on the bill. Was the plaintiff in this case part of CRST? Was the plaintiff in this case part of CRST? They say they are. They say they had their statement of facts several times, which are at page four of their brief. They say they're part of that business? They say that they are an independent contractor driving for CRST. They're not part of the CRST fleet? Yes, they are, and that's why CRST sometimes called my client for them if they called in. Sometimes Mr. Bell called in himself. Who would you bill for CRST? We bill whoever we're told to bill. If I might add, there was some talk in the statute of maintenance contracts, service contracts, commercial fleet repair. There was questions about can it be one vehicle? It can be for fleet because maintenance can be planned. Repairs can't. So, that's why the statute is split up into four parts. I can decide. I can know when I want to take four trucks in for maintenance, the oil changes. I can do that as a group, but I can't. I just have to predict the future and know when they're going to get a need of repair, and that's why I think the legislature builds this into four different exceptions. One for commercial fleet repair, and one for maintenance transactions involving two or more vehicles. You can predict maintenance. You can't predict the need for repairs. Also, knowing has to mean more than just a mere violation. If you look at the structure of the Automotive Repair Act, they don't say, when they list all the different ways you can violate it, they don't say a knowing violation of this. No, that gets tacked on in the remedy phase. So, you can know what you have to do or not know what you have to do or not know what the facts are, but knowing means more than just the violation, like the trial court erroneously said, that, oh, automatic violation, we go directly to the remedy round in a consumer Friday. No, you don't. That's not the way the legislature drafted this. It was a tremendous burden to put on those bad evidence at trial about the state of mind, and they didn't do that, and the law was incorrectly applied by the court as well. So, I would urge the court not to read this statute in a way that results in an absurd result. Stick with the rules of construction. No words should be viewed as surpluses. The way they argue it, the way the plaintiff argues it, delete is read out, because they don't have to use the statutory meaning, but they have to use Webster's, which, by the way, Webster's definition of fleet, if you don't like the one from the Illinois Vehicle Code, is two or more vehicles operated under unified control. No focus on ownership. It's operated under unified control. So, I think that's important. Statutory construction allows review of the dictionary when there's not other sources, and I think make that word fleet mean something here in this exception. Instead of this being read out as surpluses, you've got to either mean unified control or as one or more commercial vehicles. Thank you very much. Thank you both for your arguments, and the court will take this matter under advisement, and we can work toward it.